```
           IN THE UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF HAWAII

ME2 PRODUCTIONS, INC.,       )   CIVIL NO. 17-00078 SOM/RLP
                             )
        Plaintiffs           )   AMENDED ORDER ADOPTING IN
                             )   PART AND MODIFYING IN PART
vs.                          )   FINDINGS AND RECOMMENDATION
                             )   THAT DEFAULT JUDGMENT BE
FERDINAND PUMARAS, et al.,   )   AWARDED AGAINST DEFENDANT
                             )   FERDINAND PUMARAS
        Defendants           )
                             )
```

**AMENDED ORDER ADOPTING IN PART AND MODIFYING IN PART
FINDINGS AND RECOMMENDATION THAT DEFAULT JUDGMENT
BE AWARDED AGAINST DEFENDANT FERDINAND PUMARAS**

**I.      INTRODUCTION.**

Plaintiff ME2 Productions, Inc., owns the copyright to "Mechanic: Resurrection," a movie starring Jason Statham, Jessica Alba, and Tommy Lee Jones. ME2 has sued 150 defendants in numerous cases in this district for downloading and then sharing "Mechanic: Resurrection" over BitTorrent, an online peer-to-peer file-sharing network. ME2 alleges that Defendant Ferdinand Pumaras is one of the individuals who have pirated this movie by downloading and sharing it over BitTorrent without paying for it.

Pumaras defaulted in this case. This court must now decide what Pumaras must pay for pirating ME2's movie over BitTorrent. ME2 asks for $7,500 in statutory damages and $2,187.36 in attorney's fees and taxes for time spent by its attorney, Kerry S. Culpepper.

On August 22, 2017, the Magistrate Judge issued findings and a recommendation ("F&R") that this court grant in part and deny in part ME2's motion for default judgment. *See* ECF No. 35. ME2 timely objected.

The court adopts the F&R to the extent ME2 did not object to it. After *de novo* review of the parts of the F&R that ME2 did object to, this court adopts in part and modifies in part the remainder of the F&R. Default judgment is granted in favor of ME2 and against Pumaras. For Pumaras's violation of ME2's copyright rights in connection with downloading "Mechanic: Resurrection" over BitTorrent, the court declines to award ME2 the amount of damages and fees requested. The Complaint in this case is a cookie-cutter document nearly identical to several other complaints filed in this district. The Complaint names numerous Defendants based on identical allegations. Against Pumaras specifically, this court awards ME2: 1) statutory damages of $750; 2) $250 in attorney's fees, and 3) an injunction requiring Pumaras to delete or destroy any and all illegal copies of "Mechanic: Resurrection" in his possession or over which he has control and to refrain from downloading "Mechanic: Resurrection" again via BitTorrent or any other file-sharing network or protocol in violation of ME2's copyright.

## II.     BACKGROUND.

On February 1, 2017, ME2 filed the Complaint in this matter against 20 Doe Defendants, asserting claims of copyright infringement (First Claim for Relief) and contributory copyright infringement (Second Claim for Relief) in violation of 17 U.S.C. §§ 106, 501, and 504.  ME2, the copyright holder for the movie "Mechanic: Resurrection," claims that each Doe Defendant violated its copyright by downloading the movie via BitTorrent, an online peer-to-peer file-sharing network.  Each Doe Defendant, having allegedly downloaded a copy of the movie from BitTorrent to his or her computer, then allegedly made the movie (or parts thereof) available for others to download over BitTorrent.  Thus, for example, Doe Defendant 4 allegedly downloaded "Mechanic: Resurrection" from BitTorrent via IP address 72.234.114.156, then made the movie (or parts of it) available for others to download from his computer via BitTorrent.  *See* ECF No. 1.

On May 22, 2017, ME2 filed an Amended Complaint that named Defendant Ferdinand Pumaras as Doe Defendant 4.  *See* ECF No. 20.  Pumaras is not alleged to have been the first person to make that movie available for others to download over BitTorrent.

The Complaint in this case is nearly identical to complaints asserting the same claims on behalf of ME2 against 130 other Doe Defendants in Civil Nos. 17-00079 LEK/RLP, 17-00096

LEK/KSC, 17-00098 LEK/KSC, 17-00130 KJM, 17-00131 ACK/KJM, 17-00155 JMS/KSC, and 17-00320 RLP.

**III.     STANDARD.**

A district judge reviews *de novo* those portions of a magistrate judge's findings and recommendation to which an objection is made and may accept, reject, or modify, in whole or in part, the findings and recommendation made by the magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Local Rule 74.2.  *Kealoha v. Totto*, 2017 WL 1839280, *2 (D. Haw. May 8, 2017); *Paco v. Meyers*, 2013 WL 6843057, *1 (D. Haw. Dec. 26, 2013).  In other words, a district judge "review[s] the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered."  *Freeman v. DirectTV, Inc.*, 457 F.3d 1001, 1005 (9th Cir. 2006).

The district judge may accept those portions of the findings and recommendation that are not objected to if the district judge is satisfied that there is no clear error on the face of the record.  *United States v. Bright*, 2009 WL 5064355, *3 (D. Haw. Dec. 23, 2009); *Stow v. Murashige*, 288 F. Supp. 2d 1122, 1127 (D. Haw. 2003).  The district judge may receive further evidence or recommit the matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).  The district judge may also consider the record developed before the magistrate judge.  Local Rule 74.2.  While the district judge must arrive at

4

independent conclusions about those portions of the magistrate judge's report to which objections are made, a *de novo* hearing is not required. *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989); *Kealoha*, 2017 WL 1839280, *2; Local Rule 74.2.

**IV.     ANALYSIS.**

Before the court are objections to the very thorough F&R. After *de novo* review, the court adopts the F&R in part and modifies it in part.

The court adopts the F&R to the extent it determines that Pumaras, having defaulted, should be subject to default judgment in favor of ME2 with respect to the copyright infringement claims asserted in the Amended Complaint. There is no dispute that ME2 owns the copyright to "Mechanic: Resurrection" or that Pumaras downloaded a copy of that movie via BitTorrent and later made the movie available for others to copy it via BitTorrent.

**A.     Statutory Damages.**

ME2 objects to the $750 in statutory damages recommended by the Magistrate Judge, asking instead for statutory damages of $7,500. After *de novo* review, this court adopts the F&R's $750 recommendation.

Under 17 U.S.C. § 504(c)(1), the court may award statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just" for each infringed work.

When the infringement is "willful," statutory damages up to $150,000 may be awarded. 17 U.S.C. § 504(c)(2). District courts have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1355 (9th Cir. 1984).

Statutory damages "serve both compensatory and punitive purposes" so as "to sanction and vindicate the statutory policy of discouraging infringement." *Los Angeles News Serv. v. Reuters Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998) (quotation marks and citation omitted). The court is therefore guided by "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like." *Id.* (quotation marks and citation omitted).

This court recognizes that district courts outside the Ninth Circuit have awarded statutory damages greater that $750 in this kind of case. *See, e.g., Plastic the Movie Ltd. v. Jenkins*, 2015 WL 12856452, at *4 (M.D. Fla. Dec. 11, 2015) (awarding statutory damages of $6,000); *Malibu Media, LLC v. Flanagan*, 2014 WL 2957701, at *4 (E.D. Pa. July 1, 2014) (awarding $1,500 in statutory damages per infringement); *Disney Enters. v. Farmer*, 427 F. Supp. 2d 807, 817 (E.D. Tenn. 2006) (findings and recommendation that $1,200 per copyright infringement be awarded in statutory damages for a total of $6,000). However, as

6

demonstrated by the lengthy list of cases cited in the F&R, district courts within the Ninth Circuit have tended to restrict statutory damages to $750 in similar BitTorrent movie download and sharing cases.

In *Qotd Film Investment Ltd. v. Starr*, 2016 WL 5817027, at *2 (W.D. Wash. Oct. 5, 2016), for example, an analogous case involving the use of BitTorrent to download and share a movie in violation of the copyright holder's rights, the court noted that actual economic damages were likely minimal. The court did understand, of course, that Congress had authorized statutory damages to compensate copyright holders for difficult-to-prove downstream losses and to deter future infringement. *Id.* The court nevertheless noted:

> Copyright violations come in all shapes and sizes, from the unauthorized copying of a Halloween word puzzle for a child's party to the unauthorized manufacture and sale of hundreds of thousands of bootleg copies of an album. While Ms. Starr's alleged copyright violation is of concern given that it represents a theft of intellectual property, it is a relatively minor infraction causing relatively minor injury. The Copyright Act provides a range of statutory damages, and the Court finds that a recovery of $750 for participating in a BitTorrent swarm is appropriate. This award is in line with the awards made by other courts in the Ninth Circuit and appears adequate to deter Ms. Starr from infringing on plaintiff's copyright in the future. The Court is not persuaded that a higher award is appropriate simply because certain members of the BitTorrent community are not impressed by a $750 award against someone they do not know.

7

> . . . This is a steep penalty for having been too lazy to go to the local Redbox or too cheap to pay a few dollars for an authorized download. If the threat of such an award is not having a deterrent effect (a fact which plaintiff makes no effort to prove), it is most likely because the chances of prosecution are too low rather than that the amount of the damage award is of no consequence to the judgment debtor.

*Id.*, *3. Other decisions from the same district court have noted that $750 in statutory damages for similar BitTorrent copyright violations is an "appropriate" amount that is "in line with the awards given by other courts in the Ninth Circuit." *See*, *e.g.*, *Dallas Buyers Club, LLC v. Madsen*, 2015 WL 6680260, *5 (W.D. Wash. Nov. 2, 2015).

In *Glacier Films (USA), Inc. v. Gallatin*, 2016 WL 3148401 (D. Or. May 12, 2016), *report and recommendation adopted*, 2016 WL 3176583 (D. Or. June 2, 2016), the magistrate judge recommended an award of $750 in statutory damages in a default judgment case involving the downloading and sharing of a movie over BitTorrent. In recommending that award, the magistrate judge rejected a request for $7,500 in statutory damages, stating:

> common sense supports a conclusion that a $750 financial penalty for illegal[ly] downloading one movie is more than sufficiently punitive to deter others from illegally downloading free movies on the BitTorrent network. With knowledge that it will now cost $750 to watch a single movie on the BitTorrent network, consumers should be

> motivated instead to spend a few dollars to
> rent the same movie legally.

*Glacier Films*, 2016 WL 3148401, at *3. This is not the only Oregon case awarding $750 in statutory damages under similar circumstances. *See*, *e.g.*, *Voltage Pictures, LLC v. Martinez*, 2015 WL 4772856, *2 (D. Or. Aug. 11, 2015).

In *Cobbler Nevada, LLC v. Inglesias*, 2016 WL 8453643, *4 to *5 (N.D. Cal. Dec. 16, 2016), the district court determined that an award of $750 in statutory damages for a defendant's download and sharing of a movie over BitTorrent was appropriate. Citing *Glacier*, the *Cobbler Nevada* court noted that $750 is more than sufficient to deter the illegal downloading and sharing of movies on BitTorrent. *Id.*

This court agrees with the district courts of Western Washington, Oregon, and Northern California that awarding the minimum statutory damages of $750 adequately compensates copyright holders of movies for a defendant's improper downloading and sharing of a movie over BitTorrent. In this case, a high definition digital copy of "Mechanic: Resurrection" can currently be purchased for $14.99. *See*, *e.g.*, https://www.vudu.com/movies/#!content/784419/Mechanic-Resurrection (last visited September 18, 2017). The award of $750 is 50 times that cost. Even if the movie cost $25 to legally download, the $750 award would be 30 times that cost. Because of the minimal cost of downloading "Mechanic: Resurrection" legally, because of

9

how difficult it is to establish whether others have downloaded the film from Pumaras via BitTorrent, and because there is no evidence that Pumaras was the person who originally made the movie available for others to download via BitTorrent, the minimum statutory amount of $750 represents an adequate compensatory award in this case.

The court also agrees that the $750 award sufficiently deters future downloading of movies in violation of copyright holders' rights. As the court in *Glacier* stated, "With knowledge that it will now cost $750 to watch a single movie on the BitTorrent network, consumers should be motivated instead to spend a few dollars to rent [or buy] the same movie legally." 2016 WL 3148401, at *3.

### B. Attorney's Fees.

ME2 next objects to the Magistrate Judge's recommendation that no attorney's fees be awarded in this case. ME2 asks that this court instead award $2100 in attorney's fees plus $87.36 in taxes on those fees. After *de novo* review, this court modifies the F&R and awards ME2 $250 in combined attorney's fees and taxes.

In relevant part, the Copyright Act provides that "the court **may** also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505 (emphasis added). The Copyright Act's use of "may" provides

10

district courts with discretion in granting or denying attorney's fees to prevailing parties in copyright cases. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) ("The word 'may' clearly connotes discretion," and "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion"); *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1197 (9th Cir. 2001) (affirming district court's exercise of discretion to deny attorney's fees under § 505).

In *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016), the Supreme Court recently noted that, in exercising their "broad leeway" under § 505, courts are encouraged to examine "several nonexclusive factors," including "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (alterations, quotation marks, and citation omitted). *Kirtsang* also recognized that courts, in exercising discretion under § 505, may take into account "overaggressive assertions of copyright claims." *Id.* at 1989. The Supreme Court stated, "Although objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Id.* at 1989. These goals include "enriching the general public through access to creative

11

works." *Id.* at 1986; *see also Fogerty*, 510 U.S. at 518 ("the Copyright Act's primary objective is to encourage the production of original literary, artistic, and musical expression for the public good").

In *Cobbler Nevada, LLC v. Anonymous Users of Popcorn Time: Does 1–11*, 2016 WL 4238639, at *3 (D. Or. Aug. 10, 2016), the magistrate judge exercised her discretion and declined to award attorney's fees in a case involving a movie download and sharing via BitTorrent. The magistrate judge reasoned that, while BitTorrent copyright infringement cases are not frivolous, the degree of success in these cases is minimal. She noted the fees spent to achieve the award were high in proportion to the $750 damage award. Even if an injunction issued that prohibited the infringing defendant from further violating a copyright, that injunction would be *de minimis* in relation to the scope of the piracy if a movie was downloaded many times. *Id.* at *3. She also noted that the penalty of having to pay $750 in statutory damages (as well as costs) was already sufficient without an attorney's fee award to deter future violations of the plaintiff's copyright. *Id.*

The magistrate judge in *Cobbler Nevada* was unpersuaded that awarding fees furthered the goals of the Copyright Act and instead was being used in many BitTorrent cases in a manner that was an overaggressive assertion of copyright claims. *Id.* at *4.

12

She noted, "In these BitTorrent copyright cases, the threat of fee-shifting has emboldened Plaintiff's counsel to demand thousands of dollars to settle a claim, even where the infringing defendant admits early in the case that they illegally downloaded the movie." *Id.* In a parenthetical, she quoted a case in which a court had noted that

> copyright litigation is increasingly being overtaken by "copyright trolls," roughly defined as plaintiffs who are more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service. The paradigmatic troll plays a numbers game in which it targets hundreds or thousands of defendants, seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim.

*Id.* (quoting *Malibu Media, LLC v. Doe IP Address 66.108.67.10*, 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015) (alterations, quotation marks, and citation omitted)).

The magistrate judge also stated in the Oregon case:

> The Copyright Act, as it is being enforced in these BitTorrent cases, has created results inconsistent with the goals of the Act. When an individual who has illegally downloaded a movie is contacted by Plaintiff's counsel, and faces the threat of a statutory damage award that could theoretically reach $150,000 (see 17 U.S.C. § 504(c)(2)), as well as the threat of a substantial attorney fee award, the resulting bargaining process is unequal, and unfair. For this Court to award Plaintiff its attorney fees in this case would only contribute to the continued overaggressive assertion and negotiation of these Copyright Act claims.

*Id.* She then concluded that "exercising the Court's discretion to require Defendant to pay thousands of dollars in attorney fees, for illegally downloading a single movie, would render an inequitable outcome that is inconsistent with the policies served by the Copyright Act."

Much of the magistrate judge's reasoning in *Cobbler Nevada* makes sense to this court, although this court is certainly not equating ME2 or its counsel with a copyright troll. Nevertheless, as noted above, ME2 has sued 150 individuals in this district for downloading and sharing "Mechanic: Resurrection" via BitTorrent. The docket sheets in the various cases indicate that most of the defendants have settled with ME2 on terms unknown to the court. As reasoned in *Cobbler Nevada*, imposing attorney's fees on Pumaras would further the goals of the Copyright Act in only a minimal way and would instead reward the use of copyright claims to force individuals like Pumaras to pay thousands of dollars for having downloaded and shared a single movie via a peer-to-peer network. This court would be fully within the exercise of reasonable discretion if it declined to award any attorney's fees under these circumstances.

The court does, however, recognize that ME2 did incur some, albeit limited, attorney's fees in asserting its copyright claims against Pumaras. The court awards $250 in attorney's fees against Pumaras. This is a reasonable amount equivalent to one-

14

third of the $750 statutory damage award. It also represents an amount that will compensate ME2 for the fees reasonably expended in a cookie-cutter case in which much of its attorney's work could have been accomplished by a paralegal.

Even if the court awarded fees using the lodestar method, a $250 award would be appropriate. *See Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996) ("We conclude that the copyright statute provides for 'reasonable' fees based on a lodestar figure represented by the reasonable hourly rate multiplied by the hours expended in the litigation."). Counsel for ME2 submitted a declaration indicating that he spent six hours in pursuing Pumaras and asks for $2,100 in fees based on a billing rate of $350 per hour. This fee request is not reasonable.

Initially, the court notes that counsel submits that he spent 1.5 hours preparing for a settlement meeting and responding to police after Pumaras complained that he was being scammed by ME2's counsel. *See* ECF No. 32-2, PageID # 147. These tasks are presented in a "block billing" format that makes it difficult for the court to determine the reasonableness of the work done. Entries are grouped together with only one time billed for multiple items. The court is unable to determine the reasonableness of each entry, as the time spent on any specific task is missing. The court has the authority to reduce hours

15

that are block billed.  *See Welch v. Metro. Life Ins. Co.*, 480
F.3d 942, 948 (9th Cir. 2007) ("We do not quarrel with the
district court's authority to reduce hours that are billed in
block format.  The fee applicant bears the burden of documenting
the appropriate hours expended in the litigation and must submit
evidence in support of those hours worked.  It was reasonable for
the district court to conclude that Welch failed to carry her
burden, because block billing makes it more difficult to
determine how much time was spent on particular activities."
(citation omitted)).  This court declines to award any fees
relating to the police contact that is block-billed with
preparation for a meeting.

Counsel for ME2 says he spent 2 hours preparing and
filing the Amended Complaint and Summons.  *See* ECF No. 32.2,
PageID # 147.  The Amended Complaint in this case was filed on
May 22, 2017, and is substantially identical to the Amended
Complaint filed by the same counsel on March 27, 2017, in *Cook v.
Gray, et al.*, Civ. No. 16-00637 KSC, ECF No. 24.  It is not at
all clear how 2 hours at $350 per hour could be reasonable under
these circumstances.

Counsel for ME2 says he also spent 1 hour preparing and
filing the request for entry of default in this case.  *See* ECF
No. 32-2, PageID # 147.  However, like the Amended Complaint, the
request for entry of default filed on July 6, 2017, ECF No. 30,

16

is substantially identical to the one filed by the same counsel on May 26, 2017, in *Cook v. Gray, et al.*, Civ. No. 16-00637 KSC, ECF No. 43.  At most, counsel for ME2 added details about having been contacted by Pumaras and his family members and having been told that Pumaras downloaded the movie because he was too poor to pay for it.  The request also complained that Pumaras had contacted the police to assert that counsel was trying to scam him out of money.  *See* ECF No. 30-1.

Finally, counsel for ME2 says that he spent 2 hours preparing and submitting the motion for default judgment in this case.  *See* ECF No. 32-2, PageID # 147.  But the motion for default judgment, ECF No. 32, was again substantially the same as the motion filed in *Cook v. Gray, et al.*, Civ. No. 16-00637 KSC, ECF No. 48.

Given the nature of the claim against Pumaras and the number of defendants sued in this district by ME2 in connection with downloading and sharing "Mechanic: Resurrection" over BitTorrent, the time claimed by ME2's counsel for preparing and filing the Amended Complaint, the motion for entry of default, and the motion for default judgment is excessive.  These documents were based on form documents already submitted to this court in another case, meaning that, for the most part, counsel for ME2 was simply changing a few facts when submitting documents to the court.  An award of 1 hour would compensate ME2 for time

17

that its attorney reasonably spent working on this cookie-cutter case.

The court next turns to the hourly rate charged by ME2's counsel. Counsel has 17 years of experience and seeks $350 per hour in attorney's fees. This rate exceeds the prevailing market rate in this community, which this court is familiar with. *See Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) ("The prevailing market rate in the community is indicative of a reasonable hourly rate."). The court caps ME2's counsel's hourly rate at $250 (including taxes), which is closer to what has been awarded to attorneys practicing in Hawaii with similar experience. *See Blueearth Biofuels, LLC v. Hawaiian Elec. Co.*, 2015 WL 881577, *13 (D. Haw. Feb. 27, 2015) (approving a rate of $260 for an attorney with 20 years of experience and $225 for attorneys with 12 years of experience). The nature of the work causes this court to treat $250 as including applicable taxes.

The court modifies the F&R and awards ME2 $250 in attorney's fees as the amount reasonable under the circumstances.

**C. Injunction.**

The F&R declined to enjoin Pumaras from knowingly and willfully using BitTorrent or the Internet to copy or download content in violation of federal copyright law. It also declined to order Pumaras to destroy all illegal copies of "Mechanic:

18

Resurrection" and BitTorrent.  *See* ECF No. 35, PageID # 226.  ME2 has objected to this part of the F&R.

This court agrees with the F&R that ME2 seeks an overly broad injunction.  However, after *de novo* review, the court modifies the F&R and enters a limited injunction.  This court orders Pumaras to delete or destroy any and all illegal copies of "Mechanic: Resurrection" that he has possession of or control over and enjoins Pumaras from downloading "Mechanic: Resurrection" in the future over BitTorrent or any other peer-to-peer file-sharing network or protocol or in any other manner infringing on ME2's copyright with respect to that movie.

The Ninth Circuit has stated:

> 15 U.S.C. § 1116(a) vests the district court with the "power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right" of the trademark owner.  The Supreme Court recently reiterated that district courts should apply "traditional equitable principles" in deciding whether to grant permanent injunctive relief.

*Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006).  This court's injunction prevents Pumaras from violating ME2's copyright rights with respect to "Mechanic: Resurrection."  It also places the parties in the position they would have been in had Pumaras not downloaded the movie via BitTorrent in the first place.  The court declines to order a broader injunction that requires Pumaras to cease using

19

BitTorrent or to delete other movies that Pumaras obtained from BitTorrent. BitTorrent has legal uses, and ME2 is not the copyright holder with respect to every other movie.

**V. CONCLUSION.**

The court adopts in part and modifies in part the F&R. ME2 is awarded statutory damages against Pumaras in the amount of $750. ME2 is also awarded $250 from Pumaras in attorney's fees and taxes. Finally, Pumaras is ordered to delete or destroy all illegal copies of "Mechanic: Resurrection" in his possession or over which he has control and is enjoined from further infringing on ME2's copyright with respect to "Mechanic: Resurrection."

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 19, 2017.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*ME2 Productions, Inc. v. Pumaras, et al.*, Civil No. 17-00078 SOM/RLP; AMENDED ORDER ADOPTING IN PART AND MODIFYING IN PART FINDINGS AND RECOMMENDATION THAT DEFAULT JUDGMENT BE AWARDED AGAINST DEFENDANT FERDINAND PUMARAS